COLUMBIA IMPORT AND EXPORT CO., INC. *v.* UNITED STATES [1]

United States Customs Court, First Division

(Decided July 18, 1938)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Joseph R. Jackson*, Assistant Attorney General (*John J. McDermott*, special attorney, and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Before MCCLELLAND, SULLIVAN, and BROWN, Judges

SULLIVAN, Judge: The subject of this protest is described in the invoice as "Fancy Glass Alcohol Cups."

The official samples, Exhibits 1 and 2, consist of round glass containers between 3 and 3½ inches in diameter by 1¾ to 2½ inches in depth, outside dimensions. Each has a glass cover or lid, and is quite ornamental. The glass is plain or clear, and is not colored.

Noted on the invoice in red ink is: "Glass powder jars 75% P. 218 (e) Sim." This indicates that this merchandise was assessed with duty

---

[1] C. D. 15.

as glass jars "of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations" produced otherwise than by automatic machine, at 75 per centum ad valorem under paragraph 218 (e) of the Tariff Act of 1930.

The claim as contained in the protest is as follows:

We claim that these cups are not for Powder or Perfume and are used by Jewelers in connection with Alcohol Lamps in their trade and therefore are properly dutiable at the rate of 60% under paragraph 218.

The applicable portion of this provision is as follows:

(f) Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise * * * or decorated or ornamented in any manner * * * 60 per centum ad valorem.

It is testified by the witness Toshio Tobita that he had been handling this merchandise for four years. As to its use he testified:

Q. And what has been your experience with that article commercially? What experience have you had that would familiarize yourself with the use to which Exhibits 1 and 2 are put?—A. All I know is they are used by watchmakers for the purpose of keeping alcohol in the cup.

Q. Have you seen Exhibits 1 and 2 actually used by watchmakers?—A. *I haven't seen them used.* [Italics ours.] .

The witness Lampert testified as to the use of these articles as follows:

Q. Have you seen such articles used?—A. Yes, sir.

Q. Please state to the court how such articles are used?—A. Well, when the watchmaker cleans a watch he either pours benzine or denatured alcohol into this cup, and as he takes the parts from the watch he places a wire in them, and then dips them into this cup to clean them—not the cover, but the container. Sometimes when the watch is really bad he will leave the whole movement in there over night.

Q. Do you know of any other use to which Exhibits 1 and 2 are ever put?—A. No, I don't.

Q. Are you familiar with the equipment used by watchmakers and jewelers?—A. Yes, sir; I am.

The witness testified he had seen these articles in actual use "I dare say in 98% of the stores that I have been in where they have watchmakers," or in "probably a thousand throughout the United States over a period of years" as follows:

Most of the times why the watchmaker dipped a wire in with the watch parts on there, and taking them out, and after he takes them out he uses a piece of tissue paper to hold them, and then he brushes them off.

A catalog of Watchmakers' Supplies, etc., of the Merit Co., received in evidence as Illustrative Exhibit A, disclosed on page 21, where these exhibits are portrayed, Exhibit 1 as No. 1173 and Exhibit 2 as No. 1178. Both are described thereon as "Alcohol cup with ground

cover." He testified he had seen items 1173 and 1178 used by watchmakers, as heretofore mentioned. He was interrogated as follows:

Q. Have you ever known articles like Exhibits 1 and 2 to be used for the purpose of holding, containing, or transporting powder or other articles?

and answered, "No, I have not."

On cross-examination he testified he had "never" sold articles like Exhibits 1 and 2 to dental supply houses, nor seen articles like Exhibits 1 and 2 used by dentists to hold cotton or other materials; nor had he "ever seen articles like Exhibits 1 and 2 used in laboratories."

Witness Henn for the defendant testified he is "Sales manager for the Cambridge Glass Company" located in New York City; that his concern manufactures "glassware solely"; that during the past fifteen years his duties have been "selling in wholesale quantities all of their glass merchandise" to gift shops, department stores, jewelers, laboratory supplies, and dealers in drug sundries. He was shown Exhibits 1 and 2 and testified:

This is an exact duplicate of the very article we have been making, to my knowledge, of which we have molds for 25 years; and this is the same as Exhibits 1 and 2.

\* \* \* \* \* \* \*

Q. What type of houses have you been selling articles like Exhibits 1 and 2 to?—A. To hospital jobbers, technicians, drug sundry houses. The outlets are numerous.

A catalog of the Cambridge Glass Co. was shown the witness, and he pointed out on page 7 thereof cuts of items 613 and 614. These cuts exactly represent Exhibits 1 and 2 in this case. This page of the catalog was received in evidence as Illustrative Exhibit B. Items 613 and 614 are described thereon as "Benzine Cup".

He testified he had seen these articles "infrequently in use \* \* \* for technical purposes, or I would say, rather, in jewelers' laboratories," as follows:

What I would say about No. 1 pertains to No. 2. There is a solution put into this container, and this solution must necessarily retain its strength, or rather in this solution watch parts are put to be cleansed, and also we might say to remove any particles or substances that might accrue in the mechanism of the watch; and the fumes of this fluid, the strength of it, also must be kept covered. That is the object of grinding this container here, so as to retain the strength of the solution. That is my experience with the article. \* \* \* It is a solution, a benzine solution which they use. \* \* \* Incidentally I would like to add that I have also seen them used in hospitals. \* \* \* In hospitals for specimen jars. They make ideal specimen jars in laboratories, for cultures and things of that sort.

Q. Would you say from your experience that articles like Exhibits 1 and 2, that they are especially designed with the idea of holding benzine fumes or other fumes in solution?—A. Definitely.

Q. Outside of hospitals and jewelers' laboratories have you seen other uses for Exhibits 1 and 2, or articles of that nature?—A. No, I have not.

On cross-examination he testified that the catalog description of these articles as "benzine cups" "would indicate that primarily Exhibits 1 and 2 are articles intended for the watchmaker and the jeweler in connection with his work, and that he would say "that the laboratory and hospital use is a secondary, incidental use". He was asked if these articles were "primarily designed for the watchmakers' and jewelers' trade," and answered, "That was the original intent"; and "unquestionably" there are many thousand watchmakers and jewelers in the United States who are constantly using articles like Exhibits 1 and 2 on their bench or in their workshop (minutes pp. 29 and 30); that these articles are "the regular equipment of the watchmaker and jeweler."

Witness Hagerthey on behalf of defendant testified he is sales manager for T. C. Wheaton, manufacturer of pressed and blown glassware, including perfume bottles and laboratory glassware; that Wheaton manufactures articles like Exhibit 2, but not Exhibit 1, and he has sold articles like Exhibit 2 throughout the United States; that he has seen articles like Exhibits 1 and 2 used as follows:

I have seen them used in jewelers' laboratories for the purpose of cleaning watch parts, where they put a preparation, mostly benzine or alcohol, in the base, and then place the parts in there for the required length of time, to make them clean; and then they cover them with this ground glass cover, so that the strength will not evaporate.

Government counsel asked him whether there is "anything about the design of Exhibits 1 and 2 which would prevent the fumes of benzine from evaporating." He answered in the affirmative, and described the design as follows:

It is the grinding of the lip of the base and on the base of the cover, that makes them tight. If they were used as they come from the mold there would be a loose joint there, but the process of grinding makes a tight joint.

He further testified that it was possible to retain the benzine fumes for from three to five days "and let the parts of the watches soak in the benzine"; *that he has never seen articles like Exhibits 1 and 2 used for any other purposes.*

On cross-examination the witness testified that when he spoke of a jeweler's laboratory he meant "the place where a watchmaker works and repairs watches."

It is evident from the testimony adduced at the hearing that the collector's classification of this merchandise under paragraph 218 (e) is erroneous. In fact Government counsel at the trial repudiates this classification, for he stated:

The Government contends that the merchandise is properly dutiable under paragraph 218 (a) as articles and utensils used for scientific or laboratory purposes, at 85% ad valorem. * * * it (the collector's classification) is erroneous as far as 218 (a) and (e) are concerned, and erroneous as far as the importer's claim is concerned.

We agree with counsel for the Government that the collector's classification under paragraph 218 (e) was erroneous. The testimony of the witnesses for both parties so indicates. We also agree with the Government that classification under paragraph 218 (a) would also be erroneous. The evidence of use in laboratories is very minor, and was brought out in the testimony of defendant's witness Henn, who, however, admitted on cross-examination "that the laboratory and hospital use is a secondary, incidental use." It is true that Government counsel in speaking of the jewelers' or watchmakers' workplaces where these articles are used termed them "jewelers' laboratories," and Government's witnesses in responding to his questions sometimes termed them "jewelers' laboratories." A jewelers' or watchmakers' workshop or place of business is not in our opinion a laboratory.

The principal definition of "laboratory," the one commonly understood, is stated in Funk & Wagnall's Standard Dictionary as follows:

A building or room fitted up for conducting scientific experiments, analyses or similar work, or for manufacture involving chemical processes or the like; as a chemical, physical, or biological *laboratory*.

Paragraph 218 (a) provides for articles devoted to various *scientific* uses, and if they are used for such purposes it is evident from the statute that they can be used for such purposes in laboratories "or otherwise". The *major* use of these articles is not for *scientific* purposes, but for the *practical* purposes of jewelry or watch cleaning. The court is familiar with the cases cited by the defendant in its brief, and is of opinion they are not applicable to the present issue. It is not necessary to review them in this case.

Nor are the authorities cited by the plaintiff of much assistance to the court. We base our opinion in this case entirely on the facts, which indicate that these glass containers are neither scientific nor chemical articles and utensils; nor are they "jars * * * of the character used or designed to be used as containers of perfumes, talcum powder", etc. A mere inspection of the samples indicates that they are composed of ornamented or decorated glass, and, inasmuch as they are not specially provided for in the tariff act, we hold them dutiable as claimed at 60 per centum ad valorem under paragraph 218 (f) of said tariff act.

The protest is sustained. Judgment for plaintiff.